UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CLIFFSTAR CORPORATION,                        **REPORT AND**
                                              **RECOMMENDATION**
                             Plaintiff,
                                              09-CV-00690(A)(M)
v.

ALPINE FOODS, LLC and
JENSEN CRANBERRY BOGS, INC.,

                             Defendants.
_____

       This case has been referred to me by Hon. Richard J. Arcara to decide all non-dispositive motions, hear and report on all dispositive motions, and otherwise supervise pretrial proceedings [14].[1] Before me is the motion of plaintiff Cliffstar Corporation ("Cliffstar") for summary judgment on its claim for declaratory relief and dismissal of the First and Second Counterclaims by defendant Jensen Cranberry Bogs, Inc. ("Jensen") or, in the alternative, for expedited proceedings [23]. For the following reasons, I recommend that Cliffstar's motion be granted in part and denied in part.

## BACKGROUND

       The following facts are relevant to the determination of this motion. In 1996, Cliffstar entered into a contract (the "1996 Supply Contract") with Jensen, whereby Cliffstar agreed to annually purchase Jensen's cranberry crop. Sanvidge Declaration [24], Ex. A. In September 2008, with Cliffstar's consent, Jensen contracted to sell its entire 2008 cranberry crop

---

[1]    Bracketed references to the CM/ECF docket entries.

to defendant Alpine Foods, LLC ("Alpine") instead of Jensen. Jensen's contract with Alpine provided that "title to all cranberries purchased by Alpine from [Jensen] shall pass to Alpine upon the unloading of the cranberries at Alpine's receiving station" (Lukasiewicz declaration [37], Ex. A, §5), and required payment in equal monthly installments from December 2008 - August 2009. Id., §4 and Schedule A.

After having paid $1.5 million to Jensen, Alpine ceased making payments to Jensen in or about February 2009. Jensen Affidavit [41], ¶¶ 20-23.[2] Thereafter, Jensen and Cliffstar entered into another agreement dated April 23, 2009 (the "2009 Supply Contract"). (Sanvidge Declaration [24], Ex. B) which "replace[d] any and all previous contracts" between the parties. Addendum A, ¶1. Paragraph 4 of Addendum A to the 2009 Supply Contract required Cliffstar "to purchase up to 67,516 barrels of the 2008 crop from [Jensen]", to be "paid in 3 equal installments, not to commence before May 1st, 2009 with the additional 2 payments 30 days and 60 days following the original payment date". It further provided that "should Cliffstar default on payment for the 2008 crop . . . this Agreement shall be terminated and the previous Agreement [*i.e.*, the 1996 Supply Contract] shall take effect."

The record is unclear as to why Alpine agreed to deliver to Cliffstar that portion of the cranberries for which it had already paid. According to Jensen, "Alpine offered to re-deliver the 2008 Crop to Jensen or Jensen's designee, for Jensen's account, to allow Jensen to attempt to mitigate the damages" from Alpine's alleged breach of its contract with Jensen. Jensen Affidavit [41], ¶25. However, in a June 14, 2009 e-mail to Jonathan Smith of Alpine,

---

[2] Alpine denies that it breached its agreement with Jensen by ceasing payments (*see* Alpine's Memorandum of Law [36], p. 3). No party has requested summary judgment on that issue.

Gary Jensen stated that he "was surprised that you released all of the fruit and didn't keep the 15,000 barrels that you have already paid me for". Lukasiewicz Declaration [37], Ex. B. The record also refers to a July 8, 2009 letter from Jensen's attorney to Alpine's attorney, stating that "my client instructed yours to release all but 15,000 barrels of the fruit, but, apparently, your client elected to release it all", and to a July 15, 2009 letter stating that "apparently your client elected to release not only my client's berries, but an additional 15,000 barrels to Cliffstar. I do not know why he elected to do this, but they were released to Cliffstar under my client's name." Sanvidge Declaration [46], Ex. B, p. 2.

In a May 14, 2009 e-mail to Andy Reitz of Cliffstar, Jonathan Smith of Alpine stated: "I am having the lawyer write up a general agreement. We have every bin ready to be transferred." Sanvidge Declaration [46]. Ex. A. The record does not indicate the substance of the "general agreement" referred to in that e-mail, or whether the agreement was ever executed.

After Alpine released the 2008 crop to Cliffstar, Cliffstar made an initial payment of $1,364,000 to Jensen on May 15, 2009. Complaint [1], ¶29. Under Addendum A to the 2009 Supply Contract, payments in equal amounts were due within 30 and 60 days thereafter, or by June 15 and July 15, 2009. Cliffstar alleges that it paid $1,473,702.79 on June 16, 2009[3] and $626,969.74 on July 17, 2009 (63 days thereafter). Id., ¶¶29, 31. Cliffstar claims that it increased the amount of its second payment because the volume of cranberries released by Alpine was greater than originally anticipated (Sanvidge Declaration [46], ¶13), and that it reduced the amount of its third payment because it received a letter from Alpine dated July 16,

---

[3] Jensen alleges that the second payment was made on June 15, 2009. Jensen's First Amended Answer [15], ¶79.

2009, claiming title to 15,000 barrels of cranberries which it had released to Cliffstar (on the basis that it had paid Jensen for those barrels) and demanding that payment for those cranberries be made to Alpine, rather than to Jensen. Id., ¶¶14-15 and Ex B.

By letter dated July 22, 2009 (Complaint [1], Ex. E), Jensen notified Cliffstar that "the agreement has been breached for failure to make the payment due on a timely basis and the failure to make the payment of the total amount due", that it therefore "elects to terminate the agreement and to re-implement the previous existing agreement", and demanding payment of $3,622,827.40, based on the price terms under the 1996 Supply Contract.

On August 4, 2009, Cliffstar filed its Declaratory Judgment Complaint [1], seeking a declaration "(1) that Cliffstar did not breach the 2009 Supply Contract with Jensen and therefore the agreement remains in effect for the remainder of the five year term; (2) determining what entity has title to the cranberries at issue; and (3) if Cliffstar is to obtain title to the cranberries, determine to whom, and in what amount, it should pay for the cranberries." Id., ¶53. Simultaneously, it moved pursuant to Fed. R. Civ. P. ("Rule") 67 for an order allowing it to deposit in court the sum of $990,378.18 (the amount which it withheld from payment), alleging that it "is ready, willing and able to pay for the crop but is not certain which entity it should pay". Gaffney Declaration [2], ¶9. Judge Arcara granted that motion on August 14, 2009 [4], and the funds were deposited with the court that day.

In its First Amended Answer [15], Jensen seeks a declaration that the 2009 Supply Contract is invalid due to economic duress and that the 1996 Supply Contract remains in effect (id., First Counterclaim). In the alternative, Jensen's Second Counterclaim seeks a declaration that the 2009 Supply Contract has terminated due to Cliffstar's failure to make timely and complete payments, that the 2006 Supply Contract therefore remains in effect, and damages "in an amount of no less than $990,378.18 and as much as $3,624,515.87". Id., ¶¶81-88. Alpine seeks judgment "declaring that any monies paid into court be paid to Alpine". Alpine's Answer [12], p. 7.

Shortly after joinder of issue, but prior to any discovery having occurred, Cliffstar moved for summary judgment [23]. Whereas it had earlier represented that it was "ready, willing and able to pay for the crop", Cliffstar now asks the court to "declare that Cliffstar has purchased all cranberries that it is obligated to purchase from Jensen, and Order that the money paid into Court be released to Cliffstar". Cliffstar's Memorandum of Law [25], p. 5.

## ANALYSIS

### A.    Propriety of Declaratory Relief

"Since its inception, the Declaratory Judgment Act [28 U.S.C. §2201] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court 'may declare the rights

and other legal relations of any interested party seeking such declaration'". Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).

Although the issues in this case might also be resolved in an ordinary breach of contract action, Rule 57 makes clear that "the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate", and no party has argued that declaratory relief is inappropriate. Since I conclude that declaratory relief "would be useful in clarifying and settling legal relations in the case", Albradco, Inc. v. Bevona, 982 F.2d 82, 87 (2d Cir. 1992), I recommend that this action proceed as a declaratory judgment action.

**B.     Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

## C. Breach of the 2009 Supply Contract

Cliffstar seeks summary judgment declaring that it has not breached the 2009 Supply Contract, and dismissing Jensen's Second Counterclaim alleging breach of that Contract. While admitting that it "did make a payment after the July 15, 2009 date set forth in the 2009 Supply Contract", Cliffstar argues that it "cured the defect within 2 days, which is well within the cure period prescribed in the 2009 Supply Contract". Cliffstar's Memorandum of Law [25], pp. 14-15.[4]

The "cure period" to which Cliffstar refers is set forth in ¶13 of the 2009 Supply Contract, which defines "events of default" to include Cliffstar's failure "to comply with any term, condition, provision or covenant of this agreement, [where] such failure shall continue for more than thirty (30) days after written notice thereof by the non-defaulting party to the defaulting party". Id., p. 14.

However, Jensen argues that "the cure period for defaults contained in the 2009 contract . . . is not applicable to defaults for the payment due for the 2008 Crop". Jensen's Memorandum of Law [43], p. 9, n. 4. Although the Addendum to the 2009 Supply Contract addresses payments for the 2008 crop, elsewhere it states it applies to the "2009 - 2013 crop years" (Addendum, p. 2), rather than to the 2008 crop, and Gary Jensen states that he understood

---

[4] In moving for summary judgment, Cliffstar does not argue that its two-day delay in payment is an immaterial breach - instead, it argues that, as a matter of law, it is no breach at all. In rejecting that argument, I do not consider at this time whether a two-day delay in payment (if not covered by the 30-day notice and cure provision) warrants termination of the 2009 Supply Contract. That issue is for another day. *See, e.g.,* Vitol S.A., Inc. v. Koch Petroleum Group, LP, 2005 WL 2105592, *8 (S.D.N.Y.2005) ("Where a definite time of performance is specified in a contract, time is of the essence unless the circumstances affirmatively indicate a contrary intent").

"that any default on Cliffstar's payment . . . would result in the termination of the 2009 Contract". Jensen Affidavit [41], ¶50.

Therefore, it is at least arguable that the default provisions set forth in ¶13 were not intended to apply to defaults in payment for the 2008 crop. Since Cliffstar drafted the 2009 Supply Contract, for purposes of this motion I must give Jensen the benefit of the doubt on that issue. *See* Ford, supra, 316 F. 3d at 354 (the court "must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant"); Kerin v. U.S. Postal Service, 116 F. 3d 988, 992-93 (2d Cir.1997) ("it is generally accepted that ambiguous contract terms are construed against the drafter").

In addition, there are other factual issues which preclude summary judgment at this time. For example, if Cliffstar's belated final payment was not excused by the "cure period" of ¶13, then it is unclear whether Cliffstar was entitled to make the final payment at the 2009 rate rather than the 2006 rate. Furthermore, although Cliffstar argues that Alpine's assertion of a claim to title to 15,000 barrels of cranberries excused its obligation to pay for those berries, N.Y.U.C.C. § 2-607(1) requires the buyer to "pay at the contract rate for any goods accepted", and §2-607(3)(a) provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy".

The record does not indicate when Cliffstar first became aware of Alpine's claim of title to a portion of the cranberries which had been released to Cliffstar. Although Cliffstar alleges that it was "*formally* notified by Alpine on July 16, 2009 that it had a claim to the approximately 15, 000 barrels [of] cranberries that remained" (Sanvidge Declaration [24], ¶11 (emphasis added)), it does not say when it first learned *in any way* of this claim. For example,

Alpine's May 14, 2009 e-mail to Cliffstar (Sanvidge Declaration [46] Ex. A) states that it was "having the lawyer write up a general agreement". What became of this agreement, or what discussions Cliffstar and Alpine may have had in May, is unclear at this time.

Cliffstar's resort to Rule 67 does not entitle it to summary judgment, for if Cliffstar was already in breach of the 2009 Supply Contract by the date it sought to deposit the funds into court, Rule 67 cannot undo that breach. "It is well-settled that Rule 67, like all of the Federal Rules of Civil Procedure, shall not abridge, enlarge or modify any substantive right. 28 U.S.C. § 2072(b) (1988). The Rule 67 procedure . . . cannot be used as a means of altering the contractual relationships and legal duties of the parties." LTV Corp. v. Gulf States Steel, Inc. of Alabama, 969 F.2d 1050, 1063 (D.C.Cir.1992), cert. denied, 506 U.S. 1022 (1992); Prudential Insurance Co. of America v. BMC Industries, Inc. 630 F. Supp. 1298, 1300 (S.D.N.Y.1986).

Therefore, I cannot decide as a matter of law at this time whether Cliffstar is obligated to pay for the remaining 15,000 barrels, or, if so, to whom or at what price it must pay.

**D.      Economic Duress**

However, I take a different view of Jensen's First Counterclaim, which seeks to invalidate the 2009 Supply Contract based upon the doctrine of economic duress. Jensen argues that "the 1996 Supply Contract remained in effect at the time Cliffstar required Jensen to execute the 2009 Supply Contract", that "Jensen, at the time it was required to execute the 2009 Supply Contract, was faced with serious economic difficulty", and that "Cliffstar's wrongful actions

induced Jensen to execute the 2009 Supply Contract under fear of the potential economic harm threatened by Cliffstar". [15], ¶¶58, 59, 61.

The only specific allegations made by Jensen are that "a representative of Cliffstar wrongfully threatened legal actions upon Jensen if Jensen sought to enforce against Cliffstar its rights under the 1996 Supply Contract and stated to the effect that Cliffstar would sue Jensen to the ends of the earth, thereby creating economic harm to Jensen" (Id., ¶62), and that "Cliffstar representatives also placed an unreasonable restraint of the time by which Jensen was required to execute the 2009 Supply Contract and also made modifications to the 2009 Supply Contract moments before its execution, depriving Jensen of the ability to contemplate and seek the advice of counsel on the same" (Id., ¶63).

None of these allegations support a viable claim of economic duress. Under New York law,[5] "a contract may be forwarded on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will". Muller Construction Co. v. New York Telephone Co., 40 N.Y. 2d 955, 956 (1976). Cliffstar's alleged threat to "sue Jensen to the ends of the earth" if it sought to exercise its rights under the 1996 Supply Contract cannot have been "wrongful", because Cliffstar clearly had no legal obligation to purchase Jensen's 2008 crop at that time, Jensen having already contracted to sell its 2008 crop to Alpine. "Defendant has not shown that

---

[5] Paragraph 17 of the 2009 Supply Contract states that it "shall be construed, interpreted and the rights of the parties determined in accordance with New York Law". While Jensen suggests that Wisconsin law may apply to its economic duress claim (Jensen's Memorandum of Law [43], p. 10, n. 5), the elements of the claim appear to be the same under the law of both states. Id.

-10-

it was forced to agree . . . by means of a wrongful threat which precluded exercise of free will."
Kenneth D. Laub & Co., Inc. v. Domansky 172 A.D.2d 289 (1st Dep't 1991) (citation omitted).

Moreover, the fact that Cliffstar may have known that Jensen was experiencing financial difficulties - or may have "pushed" Jensen to execute the 2009 Supply Contract without adequate time for consideration - "amounts to no more than mere hard bargaining tactics" rather than economic duress. Laub, supra; Edison Stone Corp. v. 42nd Street Development Corp., 145 A.D. 2d 249, 256 (1st Dep't 1989) ("the existence of financial pressure and an unequal bargaining position are insufficient to constitute economic duress").

In any event, Jensen ratified the 2009 Supply Contract by accepting payments thereunder, and therefore waived the right to claim that it is void for economic duress. "An agreement executed under duress is considered voidable, not void . . . . One who would repudiate a contract by duress must act promptly, or will be deemed to have elected to affirm it." Industrial Recycling Systems, Inc. v. Ahneman Associates, P.C., 892 F. Supp. 547, 551 (S.D.N.Y. 1995); Edison Stone, supra, 145 A.D.2d at 253.

For these reasons, I recommend that Cliffstar's motion be granted as to Jensen's First Counterclaim.[6]

### E.  Cliffstar's Request for Expedited Proceedings

---

[6] In opposing Cliffstar's motion, Jensen also argues that Cliffstar entered into an oral agreement in April 2009 and then repudiated that agreement. Jensen Affidavit [41], ¶¶31-41. However, those allegations are not contained in Jensen's First Counterclaim, and are therefore not considered on this motion. In its Memorandum of Law ([43], p. 11) Jensen asks for leave to replead its counterclaim. It may file a motion seeking that relief.

In the alternative to its motion for summary judgment, Cliffstar "requests that the Court expedite this matter as permitted under [Rule] 57". Cliffstar's Memorandum of Law [25], p. 1.

"Rule 57 permits federal courts to expedite the hearing. Typically, declaratory relief actions receive priority". 12 Moore's Federal Practice (Third Ed. 2009), §57.63. In view of the parties' ongoing relationship and obligations, I recommend that the case be expedited to the extent possible, provided that the parties be given a reasonable opportunity to complete pretrial discovery. Whether the trial date will be expedited will be up to Judge Arcara.

Unless Judge Arcara grants Cliffstar summary judgment on all of its claims, I will schedule a Rule 16 conference shortly after he completes his review of this Report and Recommendation.

**CONCLUSION**

For these reasons, I recommend that Cliffstar's motion [23] be granted to the extent that it seeks dismissal of Jensen's First Counterclaim and expedited proceedings, but otherwise be denied. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within 14 days after receipt of a copy of this Report and Recommendation.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge

in the first instance.  See e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

 SO ORDERED

DATED: January 14, 2009

   /s/ Jeremiah J. McCarthy
    JEREMIAH J. MCCARTHY
    United States Magistrate Judge