
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CLIFFSTAR CORPORATION,

        Plaintiff,

   v.                                        Index No. 09-CV-690(JJM)

ALPINE FOODS, LLC,
JENSEN CRANBERRY BOGS, INC.,

        Defendants.

_____

**REPLY OF DEFENDANT ALPINE FOODS, LLC TO
DEFENDANT JENSEN CRANBERRY BOGS, INC.'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

                                                      Respectfully submitted,

                                                      PHILLIPS LYTLE LLP
                                                      Attorneys for Defendant
                                                      *Alpine Foods, LLC*
                                                      One Canalside
                                                      125 Main Street
                                                      Buffalo, New York 14203-2887
                                                      Telephone No. (716) 847-8400

Edward S. Bloomberg
Amanda L. Lowe
- Of Counsel -

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES................................................................................................ ii

JENSEN'S PROPOSED FINDINGS OF FACT ............................................................. 1

JENSEN'S PROPOSED CONCLUSIONS OF LAW....................................................... 8

## TABLE OF AUTHORITIES

Page

**Cases**

*Cornerstone Design, Ltd. v. Elumatec USA, Inc.*,
  No. 2005AP2448, 2007 WL 1695246 (Wis. Ct. App. June 13, 2007)............................10

*Valley Air Service, Inc. v. Southair, Inc.*,
  432 Fed. Appx. 602 (7th Cir. 2011)..................................................................................10

**Statutes**

Wis. Stat. Ann. § 402.607 (Westlaw 2015)..........................................................................10

Wis. Stat. Ann. § 402.711 (Westlaw 2015)..........................................................................11

**Other Authorities**

Black's Law Dictionary (10th ed. 2014)............................................................................... 8

Restatement (Second) of Agency §9 .................................................................................... 9

Defendant Alpine Foods, LLC ("Alpine"), by its attorneys, Phillips Lytle LLP, respectfully submits the following reply to the Proposed Findings of Fact and Conclusions of Law by Defendant Jensen Cranberry Bogs, Inc. ("Jensen"):

## JENSEN'S PROPOSED FINDINGS OF FACT

1. Jensen's paragraph 5 is incorrect. Gary Jensen was unsure who approached whom about purchasing the 2008 Crop.[1] Trial Transcript p. 147. Jensen and Alpine had previously done business together in 2007 and may have discussed the possibility of another venture in 2008 at a trade show. Trial Transcript p. 146-47.

2. Jensen's paragraph 10 is incorrect. Alpine agreed to pay $1.00/lb only for "marketable Quality Fruit." Specifically, the Contract states that "[t]he price paid to [Jensen] is based on the marketable Quality Fruit that is received by Alpine and not on gross load weights that are delivered to the Alpine cleaning site." Evidence-002.

3. In response to Jensen's paragraph 17, the first sentence of paragraph 8 of the Contract states in full: "[Jensen] represents, warrants and agrees that all cranberries delivered pursuant to this Agreement are and shall have been grown and delivered in compliance with all federal, state and local laws, rules and regulations, <u>including, without limitation, the Pure Food and Drug Act, the Food, Drug and Cosmetic Act, the Fair Packaging and Labeling Act, the Federal Insecticide, Fungicide and Rodenticide Act (the "FIFR Act") and any application [sic] U.S. Food and Drug Administration and U.S. Department of Agriculture guidelines and regulations</u>, are fit for human consumption and

---

[1] The terms 2008 Crop, Contract, PHI, JCB, Wisconsin Label, Cliffstar, Cliffstar Agreement, Sullivan Dep., Sanvidge Dep., Reitz Dep., Bell Dep. and Sohns Dep. are defined in Alpine's Proposed Findings of Fact and Conclusions of Law.

for sale in interstate commerce, and are not adulterated." Evidence-003 (omitted language underscored).

        4.       Regarding Jensen's paragraphs 18, 19 and 20, the Agrochemical Log and other documentation that Jensen provided to Alpine did not indicate that Jensen had tank mixed the acephate and diazinon applied to the 2008 Crop. Gary Jensen did not inform Alpine that he or Jensen's employees had tank mixed the two pesticides, which is a violation of the Wisconsin Label. Evidence-217-18.

        5.       Regarding Jensen's paragraph 21, Jonathan Smith, as a former crop consultant, would not tell farmers when to apply pesticides to their crop and did not recommend or advise anyone on pesticide issues. Trial Transcript p. 282-83. Also, the Contract further provides that "Alpine shall be under no obligation to furnish [Jensen] with advise or information concerning the growing of the cranberries or the manner in which [Jensen] should perform under the Agreement." Evidence-004.

        6.       Regarding Jensen's paragraphs 22 and 23, Jensen did not exercise its right under the Contract to have a representative present "at the time of delivery" to check weighing, sampling and testing of the 2008 Crop. Trial Transcript p. 147. The Contract does not provide Jensen with a right to be present for testing of the 2008 Crop <u>after</u> delivery. Evidence-001.

        7.       Jensen's paragraph 24 is incorrect. Alpine did take samples, at delivery, of each and every truckload of the 2008 Crop. Transcript p. 259, 269. No Jensen representative was present and Jensen has no evidence that this was not done.

        8.       Regarding Jensen's paragraph 25, although Jensen claims that most cranberry handlers test for pesticides in the field prior to harvest, Gary Jensen could not

identify a single time this was done before 2009.  Trial Transcript p. 203-05.  Gary Jensen was unable to testify when, if ever, either Cliffstar or Alpine ever tested for pesticides prior to harvest.  Trial Transcript p. 203-05.

9. Regarding Jensen's paragraph 31, Gary Jensen agreed to allow Alpine to defer $300,000 of its February 2009 payment.  Trial Transcript p. 62-63, 275-76; Sohns Dep. p. 22-23.  Alpine had a $4 million line of credit to cover February 2009's payment.  Trial Transcript p. 267-77; Sohns Dep. p. 21.  Jensen did not consider Alpine to be in breach of the Contract in late February 2009.  Trial Transcript p. 138.

10. Regarding Jensen's paragraphs 34 and 35, there is no evidence to support Jensen's claim that there was a substantial drop in cranberry prices between September 24, 2008 (when the Contract was signed) and February 20, 2009.  Jensen testified that at an undisclosed date "prior to the 2008 Crop," cranberry growers were receiving approximately $60 per barrel and at an unknown date after the 2008 Crop, growers were receiving below $20 per barrel.  Jensen submitted no documentary evidence in support of this claim.  To the contrary, in the Cliffstar Agreement, signed on April 23, 2009, Jensen (a cranberry grower) received $62 per barrel (Evidence-014) for its cranberries, which is higher than Jensen stated growers were receiving prior to or after the 2008 Crop.  Therefore, Jensen has not provided any competent evidence establishing a decline in cranberry prices after September 24, 2008, when the Contract was signed.

11. Jensen's paragraph 37 is incorrect.  Alpine did not wait until November 28, 2009 to test the 2008 Crop.  Alpine submitted one sample of the 2008 Crop to Covance for testing on November 24, 2008.  Evidence-145, 208.

3

12.     Regarding Jensen's paragraph 38, Jensen did not have a right under the Contract, after its delivery of the 2008 Crop to Alpine, to be present when Alpine sent samples of cranberries from all its growers (including samples from the 2008 Crop) to Covance for testing.  Jensen has not submitted any evidence establishing that the November 24, 2008 sample from the 2008 Crop, which Alpine sent to Covance: (a) was altered by Alpine; (b) did not come from the 2008 Crop; or (c) that Alpine engaged in any conspiracy or scheme to alter the test results.  Trial Transcript p. 108, 117-18.

13.     Regarding Jensen's paragraph 40, there is no evidence that Jonathan Smith was "physically available" to come to trial to testify or that he could be compelled to do so.

14.     Jensen's paragraph 42 is incorrect. The Covance test results were mailed to, not received by, Alpine on December 4, 2008.  Trial Transcript p. 290.

15.     Regarding Jensen's paragraph 43, Jonathan Smith notified Jensen of the Covance test results and the acephate issue upon returning from the Cranberry Marketing Convention, which was held the second or third week of February 2009.  Trial Transcript p. 64, 125, 135-37, 279, 288, 294, 317.

16.     Regarding Jensen's paragraph 44, Alpine could not have notified Jensen about the acephate issue prior to sending a sample of the 2008 Crop for testing. Alpine further notified Jensen of the acephate issue immediately after Jonathan Smith reviewed the Covance test results.  Trial Transcript p. 64, 125, 137, 294, 317.

17.     Regarding Jensen's paragraph 46, although Gary Jensen may have so testified at trial, at his deposition in 2011 (4 years prior to trial), he testified he did not apply acephate to the 2008 Crop in accordance with the Wisconsin Label.  The Wisconsin Label

stated the applicator should not tank mix acephate and other organophosphate insecticides, such as diazinon. Evidence-262. Jensen and its employees did just that prior to applying the acephate to the 2008 Crop. Evidence-210-213. As outlined in Alpine's Proposed Findings of Fact an Conclusions of Law, this was a violation of the Wisconsin Label and Federal and state law. There is no evidence that Jonathan Smith was aware that acephate and diazinon had been tank mixed, because that was not disclosed on the Agrochemical Log and Gary Jensen did not tell him.

18. Regarding Jensen's paragraph 47, Alpine submitted two additional samples from the 2008 Crop to Covance on March 12, 2009. The test results for those showed acephate residue levels of 1,180 and 1,520 parts per billion, Evidence-156, 158, 160, 163, 164-65, 167, Sullivan Dep. p. 122-23, 125-26, which were also well in excess of the allowable Federal levels. Trial Transcript p. 64-65, 140, 295; Evidence-156, 158, 160, 163, 164-65, 167. Jensen has not submitted any evidence establishing that the March 12, 2009 samples from the 2008 Crop: (a) were altered by Alpine; (b) did not come from the 2008 Crop; or (c) that Alpine engaged in any conspiracy or scheme to alter the test results. Trial Transcript p. 108, 117-18.

19. Regarding Jensen's paragraphs 55 and 62, there is no evidence that any of the samples from the 2008 Crop delivered to Covance by Alpine, Jensen or Cliffstar were "tampered" or "altered" by anyone.

20. Regarding Jensen's paragraphs 56 and 62, all of the samples from the 2008 Crop submitted by Jensen to Covance on April 8, 2009 were above the European tolerance for acephate, as were the vast majority of samples submitted by Jensen to Covance on May 21, 2009. Trial Testimony p. 298. Moreover, under the Contract, the

2008 Crop must have been "grown and delivered" in compliance with all federal and state laws. Evidence-003. Pesticide testing performed over five and seven months after delivery of the 2008 Crop to Alpine does not reflect that the 2008 Crop was <u>delivered</u> in compliance with the Contract.

   21. Regarding Jensen's paragraph 66, Alpine could not have provided Jensen with the test results in March 2009 because the reports were not completed until April 2009. Evidence-170-71. Nor is there any evidence that Jensen ever requested these reports. Jonathan Smith provided Gary Jensen with access to the reports that Gary Jensen asked to see. Evidence-255-61.

   22. Regarding Jensen's paragraph 68 and 69, Alpine submitted samples from multiple growers to Covance for testing on November 24, 2008. Evidence-208. All of Alpine's growers who had applied acephate has residue detected on their fruit, some above and some below legal tolerance. Trial Transcript p. 316-17; 323.

   23. Regarding Jensen's paragraph 70, Alpine was aware at the time that Cool Mist delivered its crop to Alpine that Cool Mist had misapplied acephate to its crop, a fact that Cool Mist did not attempt to hide from Alpine. Trial Transcript p. 327-28. Because Alpine was aware of the issue <u>before delivery</u>, it informed Cool Mist at that time that the crop would only be able to be utilized for juice. Trial Transcript p. 328. Alpine processed the Cool Mist crop separately and the Cool Mist crop was made into concentrate. Trial Transcript p. 329. Jensen has not submitted any evidence this concentrate was sold to the public. Jensen has not submitted any evidence about the price Alpine paid for the Cool Mist crop (contract, fair market or reduction in price).

24.     Regarding Jensen's paragraph 71, Alpine experimented with a portion of the North Haven cranberries from the 2008 Crop (which had not been sprayed with acephate). Trial Transcript p. 256-57; Evidence-219. Alpine considered this to be an experiment, Transcript p. 299, and there is no evidence that these Berry Bits were ever sold or consumed by anyone.

25.     Regarding Jensen's paragraph 75, there is no evidence that the Cliffstar Agreement contained less favorable terms than prior contracts between Jensen and Cliffstar. Jensen has not submitted evidence regarding the terms of any prior agreement between Jensen and Cliffstar, and no such prior agreement is in evidence.

26.     Regarding Jensen's paragraph 79, Alpine informed Jensen that it transferred the North Haven cranberries to Cliffstar because Jensen directed it to do so. Evidence-213. Alpine had previously notified Jensen that it would keep the Northern Marsh cranberries because they were not sprayed with acephate according to the Agrochemical Logs. Trial Transcript p.174-75; Evidence-219-23.

27.     Regarding Jensen's paragraph 82, Jensen has not submitted any evidence this concentrate was sold to the public by Cliffstar or anyone else.

28.     Regarding Jensen's paragraph 83, Cliffstar witnesses testified they were unaware of an acephate tolerance for juice. Trial Transcript p. 217; Sanvidge Dep. p. 106-07; Reitz Dep. p. 138; Bell Dep. p. 24.

29.     Regarding Jensen's paragraphs 84, 85, 86 and 88, the Contract provides that the $1.00/lb purchase price for the 2008 Crop is based on "marketable Quality Fruit" received by Alpine, not on gross load weights of cranberries delivered to

7

Alpine.  Evidence-002.  Alpine had no obligation under the Contract to pay $1.00/lb for cranberries which were not marketable quality fruit.

### JENSEN'S PROPOSED CONCLUSIONS OF LAW

1.  Regarding Jensen's paragraph 1, the Contract provides the that the $1.00/lb purchase price was for "marketable Quality Fruit" received by Alpine, not on gross load weights of cranberries delivered to Alpine.  Evidence-002.  Alpine had no obligation under the Contract to pay $1.00/lb for cranberries which were not marketable quality fruit.

2.  Regarding Jensen's paragraphs 5 and 21 through 25, Jensen maintains the burden of establishing its damages.  Jensen was only entitled to be paid $1.00/lb for "marketable Quality Fruit" delivered to Alpine.  At trial, Jensen provided no understanding of what this phrase meant.  Trial Transcript p. 50-51.  "Marketable," although undefined under the Contract, is understood as meaning "[o]f commercially acceptable quality; fit for sale and in demand by buyers."  *Marketable*, Black's Law Dictionary (10th ed. 2014).  "Quality," also undefined by the Contract, refers to the "character or degree of excellence of a person or substance, esp. in comparison with others."  *Quality*, Black's Law Dictionary (10th ed. 2014).  Jensen admitted that if the 2008 Crop did not meet the 500 parts per billion Federal standard for acephate residues, Jensen could not sell them to a handler.  Trial Transcript p. 42.  Jensen also admitted that if acephate levels exceeded 500 parts per billion, it would violate the portion of the Contract that states the cranberries are fit for human consumption, for sale in interstate commerce and are not adulterated.  Trial Transcript p. 123-24.  Jensen has not provided any evidence that cranberries that are over tolerance for acephate are "marketable Quality Fruit."  Jensen has not established any value for the cranberries in the 2008 Crop, which were not "marketable Quality Fruit."  Except for the

8

Northern Marsh cranberries, Jensen has not established that any other cranberries from the 2008 Crop were "marketable Quality Fruit."[2]

   3. Regarding Jensen's paragraph 6, Jensen has not established that it complied with the Contract. Jensen represented in the Contract that the 2008 Crop was "grown <u>and</u> delivered in compliance with all federal, state and local laws . . . are fit for human consumption <u>and</u> for sale in interstate commerce <u>and</u> are not adulterated." Evidence-003 (emphasis added). As Alpine has established, Jensen did not apply the acephate to the 2008 Crop in compliance with the Wisconsin Label or federal and state law. Therefore, Jensen has not established that the 2008 Crop complied with its representations under the Contract.

   4. Regarding Jensen's paragraphs 9 through 12, rejection of crop and revocation of acceptance are different terms with different legal import. Jensen claims that Alpine's three month delay in notification of the acephate issue was untimely. At the same time, Jensen never told Alpine it had misapplied acephate to the 2008 Crop two months <u>before</u> signing the Contract wherein Jensen represented the 2008 Crop had been grown and would be delivered in compliance with federal and state law. Jensen knew, or should have known, that it misapplied the acephate, in violation of the Wisconsin Label. *See* Restatement (Second) of Agency §9 ("A person has notice of fact if he knows the fact, has reason to know it, should know it, or has been given notification of it."). Therefore, regardless of Alpine's notification, Jensen is charged with knowing the 2008 Crop did not comply with the Wisconsin Label (and, accordingly, Federal and state law, as represented under the Contract) at very latest when Jensen delivered the nonconforming 2008 Crop to

---

[2] At most, Alpine owed Jensen $1.00/lb for the 119,000 pounds of Northern Marsh cranberries.

9

Alpine.  *See Cornerstone Design, Ltd. v. Elumatec USA, Inc.*, No. 2005AP2448, 2007 WL 1695246, *7 (Wis. Ct. App. June 13, 2007) (Under Wis. Stat. Ann. §402.607, "[a] buyer is deemed to have met the notice requirement when the seller has actual knowledge of the product's failure based upon the seller's own observations."); *see also*, *Valley Air Service, Inc. v. Southair, Inc.*, 432 Fed. Appx. 602 (7th Cir. 2011) ("[d]irect notice is not required when . . . the seller has actual notice of the defect of the particular product.") (alterations in original) (apply Illinois UCC law).  Furthermore, even after Alpine notified Jensen of the acephate issue, Gary Jensen continued to claim that he had "grown the crop according to all legal laws and label instructions regarding acephate . . . ."  Trial Transcript p. 64.  Only during trial (83 months after delivery of the 2008 Crop) did Jensen produce the Wisconsin Label, which, when compared with Gary Jensen's testimony, demonstrated that the acephate had <u>not</u> been applied according to the Wisconsin Label or Federal or state law.  Given the course of conduct of the parties herein, Alpine's notification to Jensen regarding the acephate issue was not untimely.

       5.     Regarding Jensen's paragraphs 13 through 17, the 2008 Crop (except for the Northern Marsh cranberries) did not conform with the Contract.  As stated above, these cranberries were not grown and delivered in conformity with the Wisconsin Label or Federal and state law, as required by the Contract.  They were not "marketable Quality Fruit" and the $1.00/lb purchase price in the Contract thus did not apply.

       6.     Regarding Jensen's paragraph 18, the Cool Mist crop has nothing to do with whether the 2008 Crop conformed to the Contract and no evidence of the terms of the agreement between Alpine and Cool Mist were entered into evidence.  Secondly, Alpine was aware, at the time of delivery, that Cool Mist had misapplied acephate.  Thirdly, as

10

stated above, there is no evidence that Alpine "used" a portion of the 2008 Crop, beside the sample tests and some Berry Bits derived from the North Marsh bog.  Lastly, Cliffstar's use of the 2008 Crop does not demonstrate Jensen's compliance with the Contract between Alpine and Jensen. The Cliffstar Agreement addendum (whereby Cliffstar agreed to purchase some of the 2008 Crop) does not mention any pesticide testing or compliance with Federal or state law as a precondition to purchase.  Evidence-014-15.

       7.     Regarding Jensen's paragraph 20, there is no evidence that freezing the 2008 Crop substantially changed the cranberries.  Freezing cranberries after delivery was a normal and accepted practice or otherwise the cranberries would rot.  Trial Transcript p. 34.

       8.     Regarding Jensen's paragraphs 26 through 34, Alpine is entitled to recovery of $1.5 million paid to Jensen, whether under a theory of revocation of acceptance or breach of contract/warranty.  *See* Wis. Stat. Ann. § 402.711 (Westlaw 2015) (a buyer that revokes acceptance of goods may "recover[] so much of the price as has been paid"); Evidence-003 (Jensen shall indemnity Alpine for "all liability, loss, damage, cost or expenses suffered or incurred by Alpine (including reasonable attorneys' fees) arising out of the breach of [Jensen's] representations, warranties and agreements").

| | |
|---|---|
| Dated:  Buffalo, New York<br>            December 22, 2015 | PHILLIPS LYTLE LLP<br><br>By: /s/ Amanda L. Lowe_____<br>      Edward S. Bloomberg<br>      Amanda L. Lowe<br>Attorneys for Defendant<br>*Alpine Foods LLC*<br>One Canalside<br>125 Main Street<br>Buffalo, New York  14203-2887<br>Telephone No. (716) 847-8400<br>ebloomberg@phillipslytle.com<br>alowe@phillipslytle.com |

TO:   Hugh Carlin, Esq.
        Trevor M. Torcello, Esq.
        Gross Shuman Brizdle & Gilfillan, P.C.
        Attorneys for Defendant
        *Jensen Cranberry Bogs, Inc.*
        465 Main Street, Suite 600
        Buffalo, New York 14203
        Telephone No. (716) 854-4300
        hcarlin@gross-shuman.com
        ttorcello@gross-shuman.com

Doc #01-2910480.1